## Collingdale Borough v. Hood & Gross

*Morton Z. Paul*, for plaintiff.

*John V. Diggins*, for defendant.

MACDADE, J., September 11, 1936.—Early in the spring of 1936, the School District of the Borough of Collingdale, wishing to avail itself of funds furnished by the United States Government through its Works Progress Administration to make certain additions, repairs and alterations to its high school building in the borough, had plans and specifications drawn up for such additions, repairs and alterations. These plans and specifications were submitted to the Works Progress Administration and the Works Progress Administration agreed to furnish to the school district of the borough sufficient funds to complete the work, providing that the work was done in accordance with the rules and regulations of the Works Progress Administration, and that the Works Progress Administration should have supervision of the expenditure of the funds. A contract in the approximate sum of $82,000 for the repairs, additions and alterations to the building was let to Frank C. Hood and George E. Gross, trading as Hood and Gross, defendants herein, and the work begun.

Shortly thereafter one Hickman, building inspector for

the borough, demanded that Hood and Gross take out a building permit for said building or said repairs, alterations and additions. They refused to do this on the ground that the work was a Federal project and not subject to taxation, permit fee, or even supervision on the part of a branch of the State Government, to wit, the borough, whereupon the building inspector swore out a criminal warrant against Hood and Gross and caused a fine of $25 to be levied against one of these parties. An appeal was taken and which appeal is now adjudicated.

During the pendency of this appeal, a bill in equity was filed by the borough requesting the court to restrain the contractors from proceeding with the work. This matter came on to be heard. Practically all of the averments of facts in the bill in equity were admitted.

The question before the court is not highly involved, although counsel for the borough insists upon injecting into the case, as a basis for his suit in equity, a contract to which the borough is not a party and which is wholly between Hood and Gross and the Works Progress Administration and the School District of the Borough of Collingdale. The issue is simply this: Does a school district have to take out a building permit and pay a tax for the privilege of making repairs, alterations and additions to its property, and does the Works Progress Administration, a branch of the Government of the United States, need to take out a building permit in order to be permitted to proceed with a project financed with its funds, and under its supervision and control?

Our position is, first, that the School District of the Borough of Collingdale is a quasi-municipal corporation with the same dignity and authority, within the scope of its legislative rights, as the Borough of Collingdale within its scope as a municipality. They are subdivisions of the State Government and absolutely controlled and directed by State legislation, excepting that the State Constitution

compels a functioning of our school system while a municipality may be eliminated overnight by legislative fiat.

As we said in our opinion filed in the summary conviction case:

"We learned eventually that the contractors claimed they were exempt from the provisions of the ordinance in toto because the performing of work and the furnishing of materials for building a school in the borough was under a loan from the Works Progress Administration of the United States of America, in pursuance to Congressional and Presidential authorities in promoting a National governmental policy of economic recovery. We should think, and this is only obiter dictum, for we shall not decide this all-important question of National significance until the matter is properly before us, that if a school building is being erected by those defendants under the auspices of and being built with funds furnished by the Works Progress Administration, conceded to be an agent of the Government of the United States of America, such agency would not be obliged to take out a building permit, non constat a permit may be refused and the building retarded because a local building inspector may not approve plans and specifications. This attitude is unthinkable, and we have always thought Chief Justice Marshall settled this question in the celebrated bank case of McCulloch v. Maryland, 17 U. S. 316. This law was good enough during the late World War and it should be just as potent in peace. The functions of the United States Government cannot be impaired or infringed upon by a local system of taxation and penalties. If so, then such taxation and penalties can soar to such lofty heights as thus to destroy government if you please. We concur in Chief Justice Marshall's opinion that it just cannot be done in free America. If counsel for the Borough of Collingdale will study the decisions of the United States Supreme Court in many cases growing out of the operation of the United States Emergency Fleet Corporation, he will readily perceive that our own Hog Island, in Delaware County, was involved, and

the housing administration in Philadelphia, where local governments were restrained by the United States courts from levying and collecting taxes." A municipal corporation has no right or authority to govern another, or to subject the other to any of its taxes, rules, or regulations. This can only be done by a paramount branch of State government and not by an equal or parallel branch.

We are also of the opinion that the permit fee is a tax. The fact that the project is being completed with funds furnished by and under the supervision and control of the Works Progress Administration, a branch of the Government of the United States, makes this a Federal project, as well as a municipal project, and the Borough of Collingdale has no inherent authority to supervise any project of the Government of the United States of America, nor has it any right to tax the Government of the United States of America or any administrative branch thereof.

It is common knowledge that every post office and every United States Government building constructed in any State in the United States is wholly under the supervision of the United States Government and never has been subjected to taxation, the necessity for permits, permit fees, or anything in the nature thereof, and the power so to demand is wholly lacking even in a State, and much more so wholly lacking in a political division of such State.

Counsel for plaintiff lays great stress before the court on the contract between Hood and Gross and the school district and the Works Progress Administration. This is a formal contract, used by all contractors, and its provisions and the right to enforce them are wholly between the school district, the Works Progress Administration and the contractors, and what this contract may or may not say will not inure to the benefit of the borough.

Just as some sidelight, we were at a loss to understand just why the Borough of Collingdale wanted to force the school district to pay the substantial fee required under the ordinance to take out a permit for this project in view of the fact that the school district, as well as the con-

tractors and the Works Progress Administration, were willing that all plans and specifications be turned over to the borough and that their building inspector be given the same right to inspect them as if this were not a municipal project and as if this were not a project of the United States Government. This was done not because the school district or the Works Progress Administration felt that the Borough of Collingdale had any right to such supervision, but in the interest of coöperation and coördination, as suggested by this court. However, this has not satisfied the Borough of Collingdale, and we trust that the real reason why this school district is being harassed in regard to this project is not the circumstance, as revealed in the testimony, where Hickman, the building inspector, testified that his fees come from building permits; he is not salaried and gets a portion of all fees paid. This is a large contract; the building permit fee is exceptionally large. Has this situation been developed in the Borough of Collingdale by its building inspector in an attempt to put himself in a position to collect for himself a substantial fee? We hope civic pride will eventually assert itself in view of the generous gesture of our common country to aid in economic recovery. Because this is a project of the Government of the United States this bill in equity should be dismissed. . . .